UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

REGINA ESSES a/k/a RACHEL ESSES,

                                        Plaintiffs,

                   -against-

TANYA ROSEN and TANYA ROSEN INC.,



                                        Defendants.

-------------------------------------------------------------------x

Docket No.: 24-cv-03605

**FIRST AMENDED**
**VERIFIED COMPLAINT**

        Plaintiff, Regina Esses a/k/a Rachel Esses, by her attorney Weg Law PLLC, as and for their

verified complaint against Defendants Tanya Rosen and Tanya Rosen Inc., upon information and

belief allege as follows:

## PRELIMINARY STATEMENT

        1.      Plaintiff Regina Esses a/k/a Rachel Esses (hereinafter referred to as "Esses" and/or

"Plaintiff") is a former employee of Defendants Tanya Rosen (hereinafter referred to as "Rosen")

and Tanya Rosen Inc. ("TR Inc"). The harrowing ordeal detailed in this complaint unveils a sinister

campaign of harassment, defamation, and intentional infliction of emotional distress orchestrated

by the Defendants against the Plaintiff.

        2.      Essential to understanding the egregiousness of the Defendants' actions is the

cultural and communal context within which both parties operate. The Plaintiff, an Orthodox Jew,

hails from the closely-knit Orthodox Jewish enclave of Brooklyn, New York, while the Defendant,

Rosen, not only shares this cultural background but has gained notoriety among Orthodox Jewish

communities across New York and New Jersey and even has reach throughout North America and Israel, due to her professional endeavors.

3.      Defendants, through TR Inc., operate in the health and wellness industry, with Rosen at the helm of "Nutrition by Tanya," offering nutrition counseling predominantly to Orthodox Jewish clients. Leveraging social media platforms like Instagram, where Rosen commands a significant following, the Defendants have wielded their influence to disseminate false information and engage in a targeted campaign of harassment against the Plaintiff.

4.      Plaintiff's tenure with Defendants, spanning approximately a decade, was marred by a toxic work environment perpetuated by Rosen's encouragement of staff to engage in deceptive practices aimed at discrediting competitors and undermining others' reputations. This insidious pattern of behavior, initially directed at others, eventually turned against the Plaintiff upon her decision to pursue career advancement opportunities outside of TR Inc.

5.      The Defendants' retaliatory actions against Plaintiff included a barrage of threats, cyberbullying, and vindictive behavior, escalating to the dissemination of intimate photos without Plaintiff's consent, public defamation, and even the despicable act of sending feces to Plaintiff's home.

6.      Plaintiff's repeated pleas for cessation of harassment fell on deaf ears, as Defendants persisted in their malicious campaign, resorting to impersonation, false allegations, and the exploitation of deeply personal traumas for the sole purpose of inflicting irreparable harm upon Plaintiff's reputation, livelihood, and emotional well-being.

## PARTIES AND VENUE

7.      Plaintiff is an individual, residing in the State of New Jersey.

8.      Upon information and belief, Defendant Rosen is an individual residing in the State of New York, County of Kings.

9.      Upon information and belief, Defendant TR Inc is a domestic corporation, authorized and actually conducting business in the State of New York, County of Kings, with its principal place of business located at 3817 13th Ave, Brooklyn, NY 11218.

## BACKGROUND

10.      Rosen maintains multiple social media accounts for her businesses, and among other accounts, runs a public Instagram account under the username 'nutritionbytanya' with approximately 51,000 followers predominantly comprised of Orthodox Jews. Rosen uses these social media accounts as well as other means (including WhatsApp stories and blasts) to spread information within these tightly knit communities.

11.      Plaintiff began working for Defendants approximately 10 years ago, in or about October 2014. Plaintiff was initially employed as a babysitter for Rosen's children and a secretary for Rosen's business.

12.      During Plaintiff's employment with Defendants, Rosen engaged in a pattern of behavior wherein she encouraged staff members to disseminate false statements aimed at benefitting Defendants. This included pressuring staff to fabricate endorsements for Rosen and to denigrate and harass former employees, business competitors or individuals on Rosen's apparent and ever-growing list of enemies. Specific examples of this behavior include:

- encouraging former employees to contact competitor nutritionists as well as former employees whom Rosen has deemed a potential threat to her business, under false pretenses, soliciting information about their practices such as pricing and locations while posing as potential clients.

- requesting employees fabricate text messages complaining about competitors.

- instructing employees to post fake negative reviews on platforms like Yelp aimed at sabotaging competing companies, notably this directive was met with resistance from employees.

- suggesting employees impersonate consumers of a magazine, advocating for Rosen's reinstatement as a columnist.

13.     Since Plaintiff was aware of this pattern and practice consistently employed by Rosen, Plaintiff could recognize Defendant's smear tactics when she became the target.

14.     One year after Plaintiff began employment with Defendants, her role with the company expanded and she began to perform a host of administrative and bookkeeping duties, as well as personal assistant tasks for Rosen and eventually began nutrition counseling and coordinating personal training for Defendants' businesses.

**FACTS RELEVANT TO ALL CAUSES OF ACTION**

15.     In early October 2022, Esses was solicited by sister companies Five:30 Studio (hereinafter "Five:30") a fitness studio and Olivvi World (hereinafter "Olivvi"), a clothing line, with a job offer to assume a pivotal role within their companies, overseeing the management of the fitness studio and spearheading the operations of their clothing line.

16.     Upon deliberating on the offer, on or about October 5, 2022, Esses promptly notified Rosen disclosing the job offer.

17.     Following discussions with Rosen, during which Rosen declined to present a counteroffer, Esses decided to accept the new position and began preparations for her transition from TR Inc.

18.     As Esses readied herself for the transition from TR, Inc, she formally resigned with a two-week notice to Rosen. Additionally, Esses promptly extended her willingness to assist in transferring her responsibilities, facilitating the onboarding process for a successor, and making every effort to ensure a smooth transition.

19.     It was during this transition period that Rosen initiated what became a relentless campaign of harassment, threats, cyberbullying, and vindictive behavior aimed at Esses and her loved ones stemming from Rosen's resentment toward Plaintiff's decision to pursue a better career opportunity.

20.     In or about October 2022, during a text message conversation, Esses wrote "Please stop harassing me I didn't do anything . . . I really want to end peacefully since today's my last day" to which Rosen responded "There's no peace option at this point you dug your own grave darling . . . shame on u [sic] Ungrateful little selfish bitch that u [sic] are Just a $ hungry wanna be. . ."

21.     Before her resignation, Esses proposed a business venture to Rosen: Esses would launch an Emsculpt[1] business where Esses would handle operations and Rosen agreed to host the Emsculpt business out of one of her locations and provide social media marketing for it in exchange for a share of profits. This novel venture aimed to fill a market void within the local community, motivating Esses' pursuit.

22.     On or about October 7, 2022, Rosen sent Esses a text message regarding the Emsculpt business, stating she "can get the same one" (referring to the machine), this message insinuated Rosen's intention to appropriate Esses' idea and introduce a competing business offering the same service within the local community.

---

[1] A machine that uses therapeutic levels of magnetic fields to aid in the contraction of muscles to burn fat and/or build muscle.

23.     Esses had already launched her Emsculpt business before resigning from Defendants' businesses and she continues to operate the business to this day.

24.     Esses had two business partners in the Emsculpt business at the time she resigned, Basya Kovaks and Jenny Wallach, both of whom were employees of Defendants at the time. Each of them was managing a different Emsculpt location as part of the partnership.

25.     Rosen individually contacted Kovaks and Wallach, threatening them with termination unless they immediately severed ties with Esses.

26.     Wallach, succumbing to the pressure, reluctantly acquiesced to the demand and terminated her partnership with Esses.

27.     Kovaks chose to stand by Esses and Rosen, in retaliation, promptly fired Kovaks.

28.     Defendants did in fact launch an Emsculpt service called 'Sculpted by Tanya' to compete with Plaintiff.

29.     On numerous occasions, Rosen posted to her Instagram stories, promoting her Sculpted by Tanya under the Instagram username 'sculptedbytanya' and then shared on the 'nutritionbytanya' page as well as other Instagram pages maintained by Defendants and their employees, indirectly referencing Esses' company without explicitly naming it. Rosen claimed Esses' business offered an inferior service that was ineffective. To support her claims, Rosen presented fabricated text message threads purportedly from former clients of Esses who expressed dissatisfaction with Esses' services and only stated satisfaction with Rosen's.

30.     Esses learned from a colleague still employed by Defendants that Rosen had been instructing staff to speak disparagingly about Esses' Emsculpt company.

31.     On or about October 9, 2022, Rosen sent Esses an unprovoked text, threatening that if Esses were to "bash" Rosen publicly or privately, Rosen would retaliate by contacting Esses' husband and divulging secrets about Esses which Rosen purported to know.

32.     Later, by text message, Rosen made disparaging remarks about Plaintiff's ethnicity, calling Esses a ""bucharian money hungry girl".

33.     Upon information and belief, around this time, Rosen disseminated a group text message to her employees alleging that Esses "did several illegal things" and alleged Esses was involved in criminal conduct, all of which was false.

34.     On or about October 23, 2022, Rosen texted Esses' spouse, Judah, threatening that she would reveal Esses' secrets, seemingly to cast doubt within their marriage and to destroy their relationship.

35.     Upon information and belief, In or about February 2023, Rosen commenced efforts to unearth information about Esses's new employers. In furtherance of this initiative, Rosen, and her employees, through her employees' phone numbers and by utilizing fake phone numbers sourced online for text messaging purposes and fake email addresses, dispatched numerous messages to Esses and her employees. Some of these communications included: claims that employees at Five:30 dressed like "prostitutes" and emails to a popular local magazine where Five:30 advertised ostensibly to further tarnish Esses' good name.

36.     Upon information and belief, Defendants and their employees sent multiple text messages to Plaintiff and her staff members, posing as potential customers, and made fraudulent business inquiries while demanding information about pricing and location.

37.     On or about January 12, 2023, Rosen sent a text message to Esses' husband, Judah, containing sexually explicit content about Esses. Rosen also threatened to reveal purported secrets

allegedly divulged by Esses in confidence, attempting to sow discord in Esses' marriage. Rosen falsely claimed that Esses was unhappy in her marriage, asserted that Esses was secretly spending money behind Judah's back and claimed Esses has a "sugar daddy" a term meant to refer to a wealthy older man who provides gifts or financial support in exchange for companionship or sexual favors.

38.     This text message was clearly sent with the malicious intent to destroy Esses' marriage.

39.     On or about February 6th, 2023, Rosen sent Esses a disturbing video message, wherein she threatened to disseminate rumors about Esses and divulge highly sensitive private information. Specifically, Rosen threatened to publicize the childhood sexual abuse Esses confided to Rosen about to shame and psychologically torture Esses.

40.     Around that same time, Rosen sent Esses a barrage of threatening text messages, stating she would report Esses to the IRS via an anonymous form and threatening that Esses would be imprisoned as a result.

41.     In or about late March 2023, Rosen and direct messaged a close friend of Plaintiff through Rosen's Instagram account 'nutritionbytanya', attempting to ruin Esses' long-standing friendships by insinuating Esses had revealed personal, confidential, and potentially embarrassing information about these friends to Rosen. Rosen's intent was clearly to cause Esses social harm and isolation.  She repeated this tactic in April 2024 when she text messaged another close friend of Esses with the same insinuations and intent to ruin Esses' friendships.

42.     On or about April 18, 2023, Esses received a vile and disturbing package at her home, where she resides with her husband and young children.

43.     The packaged contained actual feces from a company called "Shit Express", known for its online service offering to send excrement in a box worldwide. Shit Express' website advertises it as "a simple way to send a piece of shit in a box around the world".

44.     This unsolicited package was not only offensive and unsanitary but also posed potential health risks to Esses and her family and was overall an incredibly distressing attack.

45.     Esses, determined to uncover the sender, reached out to the CEO of Shit Express, who confirmed the sender's identity as "Tanya" (referring to Rosen).

46.     In April 2023, Rosen, and her employees brazenly exploited Esses' image without her consent for marketing Sculpted by Tanya, Instagram, and WhatsApp stories. They shamelessly used photos of Esses in her bra and underwear, obtained and used without Esses' permission or consent. While Esses' face was not visible, her distinctive physical features were recognizable, prompting a barrage of messages inquiring as to why she was virtually exposed in Rosen's public marketing campaign which was broadcasted to Rosen's over 51,000 followers and available to any user on Instagram via Rosen's public account, thereby accessible to Instagram's over one billion users.

47.     Upon information and belief, to compound the egregiousness of their actions, Rosen and/or her employees, under Rosen's instruction, resorted to using a fake phone number to taunt Esses' husband, sending a message that callously insinuated his acceptance of the inappropriate portrayal of his wife, writing: "bro is this your wife you don't mind huh". The text included a doctored screenshot of the intimate photo Rosen posted to her Instagram and WhatsApp status which she altered to make it appear as though it had been posted on Esses' own Instagram account, 'raysfitnessandnutrition'. This deceitful act aimed to falsely implicate Esses in the

dissemination of the intimate photo and create unnecessary tension within their marital relationship.

48.     Furthermore, Rosen's employees callously amplified the humiliation by sharing this exploitative content on their own Instagram stories and WhatsApp status, evidently seeking to maximize the viewership of Esses in this degrading and vulnerable position.

49.     Esses implored the employees of Defendants to remove the photos of her, desperately seeking an explanation for the unjustifiable exploitation of her images. However, her pleas fell on deaf ears as she received no explanation.

50.     In May 2023, overwhelmed by the relentless onslaught of attacks by Rosen and her proxies, after having filed two police reports previously, Esses filed a criminal complaint against Rosen in the State of New Jersey, County of Monmouth. The complaint detailed the ongoing campaign of harassment and threats, the delivery of feces, the unauthorized use of Esses' images and the malicious disparagement of her character.

51.     Rosen persisted in her attacks. In or about June 2023, Rosen issued another threat to Esses, texting one of Plaintiff's employees insisting on a call to divulge purportedly embarrassing information about Esses which she ominously claimed would soon become public.

52.     In or about July 2023, Rosen and/or her employees, utilizing one of her fake Instagram accounts, direct messaged an Instagram "influencer"[2] hired by Esses to promote her Emsculpt business. Defendants falsely alleged that Esses used 'fake machines' incapable of producing results and sought to persuade the influencer to sever ties with Esses, asserting the association would tarnish the influencer's image.

---

[2] An Influencer is an Instagram user with an established credibility and audience, and who can persuade their audience to make purchases, try brands, etc.

53.     On or about March 10, 2024, Rosen launched a public attack against another business owned by Plaintiff, Cloud Zen, via her Instagram stories on the nutritionbytanya account. In this post, she falsely labeled the business as 'one of her worst ideas' despite Rosen not being involved whatsoever in the conception or creation of Cloud Zen, simultaneously taking false credit for the business, and publicly bashing it.

54.     By the end of March 2024, Rosen escalated her cyberbullying campaign against Esses. Upon information and belief, Rosen created yet another fake Instagram account under the username 'rachelesses2024', impersonating Esses. The profile picture used depicted a brunette with cartoonishly enlarged lips, clearly intended to mock Esses.

55.     Upon information and belief, Rosen or someone acting on her behalf, composed an Instagram bio for the 'rachelesses2024' account which read: "love my girls. Survivor of childhood sexual abuse. Sugar daddies welcomed" alongside an emoji of a bikini.

56.     This appalling and distressing bio was crafted with malicious intent to exploit a deeply painful and traumatic experience of Esses', an experience she never consented to be publicized. Furthermore, the bio sought to portray Esses as soliciting men for 'sugar daddy' relationships, a characterization Esses vehemently rejects.

57.     Upon information and belief, Defendants and their employees then utilized the 'rachelesses2024' account to leave comments on popular Instagram accounts and personalities within the Orthodox Jewish community, as part of their concerted effort to tarnish Esses' reputation and subject her to public humiliation. Comments left using the 'rachelesses2024' account included statements such as "I'm fat" and "I'm so hungry feed me", deliberately designed to undermine Esses' credibility within the realm of nutrition and fitness.

58.     Upon information and belief, Defendants, and their employees, through the 'rachelesses2024' account, initiated numerous follow requests and masqueraded as Esses while engaging with individuals known to Esses on Instagram with the malicious intent to portray Esses in a negative and false light.

59.     In or about April 2024, Esses began receiving text message inquiries about a secretary position she had posted on her Instagram account. These inquiries were from an individual pretending to be interested in the job but intended to obtain information about Esses and her business.

60.     Recognizing this as another phishing attempt orchestrated by Rosen, Esses confronted the individual over the phone. The individual, who identifying herself as 'Debra', confessed to being a current employee of Defendants and broke down. She admitted her embarrassment at creating a fake Instagram account at Rosen's direction and using it to message Esses.

61.     Debra further confessed that Rosen had instructed her to text Esses about the position Esses posted and to gather information on Esses and her businesses, as part of Rosen's ongoing efforts to undermine Esses' livelihood.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**

62.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

63.     Defendants' intentional extreme and outrageous conduct, including but not limited to Defendants' relentless campaign of harassment, threats, cyberbullying, and vindictive behavior aimed at Esses and her loved ones, as described above, intended, and did cause Plaintiff severe emotional distress.

64.     Defendants' intentional extreme and outrageous conduct is the proximate cause of Plaintiff's injuries, to wit, severe emotional distress.

65.     Accordingly, Plaintiff is entitled to financial damages, including punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Tortious Interference with Business Contracts)**

66.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

67.     Defendants' intentional actions including posting derogatory remarks about Plaintiff and her businesses on social media, attempting to dissuade individuals from engaging in business with Plaintiff, and spreading false information to disrupt Plaintiff's business operations, as extensively detailed herein, constitutes intentional conduct aimed at interfering with Plaintiff's contractual relationships and business pursuits.

68.     Accordingly, Plaintiff is entitled to financial damages, including punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Violation of N.Y. Civ Rights Law § 51)**

69.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

70.     Plaintiff had a reasonable expectation of privacy that images of her in her underwear would remain private. Defendants knew or should have known that these photos were not to be disseminated before the dissemination of them.

71.     Defendants published and disseminated images of Plaintiff in her underwear to market their business.

72.     The images disclosed by Defendants were intimate images.

73.     Defendants disseminated and published the intimate images without Plaintiff's consent.

74.     The sharing of the images, harassed, embarrassed and alarmed Plaintiff.

75.     Accordingly, Plaintiff is entitled to financial damages, including punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Violation of N.Y. Civ Rights Law § 52-B [New York State's "anti-revenge porn' statute])**

76.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

77.     Plaintiff had a reasonable expectation of privacy that intimate images of her in her underwear, depicting her exposed, would remain private. Defendants knew or should have known that these photos were not to be disseminated before the dissemination of them.

78.     Defendants published and disseminated images of Plaintiff in her underwear without consent to exact revenge on Plaintiff.

79.     The sharing of the images, harmed, harassed, embarrassed and alarmed Plaintiff.

80.     Accordingly, Plaintiff is entitled to financial damages, including punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
**(Violation of New York City Administrative Code § 10-177 [New York City's "anti-revenge porn' statute])**

81.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

82.     Defendants disclosed Plaintiff's intimate images without her consent.

83.     Defendants' intention for disclosing the intimate images was to cause substantial emotional harm to Plaintiff and to cause Plaintiff to lose customers and cause Plaintiff economic harm.

84.     Plaintiff was readily identifiable in the intimate images.

85.     As a direct and proximate result of Defendants' conduct, Plaintiff has been materially and substantially harmed.

86.     Accordingly, Plaintiff is entitled to financial damages, including punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Negligence)

87.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

88.     As a business professional, Defendants had a duty of care and caution in verifying the images and information disseminated on their public forums, including but not limited to social media, was accurate and that they had permission to disseminate same.

89.     Plaintiff never provided Defendants permission to use her images in their marketing campaigns nor to discuss her, her business, or her family.

90.     Defendants had a duty to exercise care and caution before disseminating and publishing intimate photos of Plaintiff, especially considering the intended audience of the Orthodox Jewish community, where such conduct is unprecedented and deeply frowned upon.

91.     Defendants' negligent dissemination of intimate photos without Plaintiff's consent for use in their marketing strategies demonstrates a reckless disregard for Plaintiff's right to privacy.

92.     As a direct and proximate result of Defendants' negligence, Plaintiff has been materially and substantially harmed.

93.     Accordingly, Plaintiff is entitled to financial damages, including punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Defamation)

94.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

95.     On or about February 4, 2023, Rosen posted a public message to her Instagram page, 'nutritionbytanya' blasted to her 51,000 followers referencing serious "concerns" about a former staff member, alluding to Esses.  and then instructed anyone with complaints or questions about this former staff member to message her and that she will further direct them to rabbis who were allegedly handling the situation.

96.     This statement is false and defamatory, falsely implying that there had been serious concerns expressed about Esses and falsely implying that Rabbis were handling a situation involving Esses.

97.     This statement communicated to Rosen's followers that Plaintiff was involved in serious misconduct which would warrant the involvement of community Rabbis.

98.     Rosen published this statement to third parties via her Instagram stories. Once posted, the statement was available to all 51,000 of Rosen's followers via their Instagram stories feed. Furthermore, Rosen's Instagram account is public thus viewable by any Instagram user (of which there are more than one billion users) regardless of whether they follow Rosen by visiting Rosen's Instagram page 'nutritionbytanya'.

99.     Defendants published the foregoing statement to third parties through Defendants' Instagram account, reaching a broad audience and causing widespread harm to Plaintiff's reputation.

100.    made the foregoing statement without Plaintiff's consent, without privilege or authorization.

101.    Defendants made the foregoing statement with knowledge that it had contained a false insinuation about Plaintiff or with reckless disregard of the truth.

102.    Defendants made the foregoing statement with malicious intent directed toward Plaintiff.

103.    The foregoing statement directly and proximately caused Plaintiff special harm.

104.    As a direct and proximate cause of the foregoing statement Plaintiff suffered both economic and noneconomic damages.

105.    Accordingly, Plaintiff is entitled to financial damages, including punitive damages.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**(Defamation)**

106.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

107.    On or about February 7, 2023, Rosen posted to her Instagram stories publicly that her former employee had previously been in jail, and that employee smelled of marijuana and alcohol while at work. Rosen further posted phony text message threads to her public Instagram story, purporting to be texts from customers claiming said former employee was a drug user, flirted with the husbands of customers and most disturbingly a heinous allegation that she had sexual relations with a minor child of a customer.

108.    Given that Rosen's followers were aware of Esses departure from the company, Rosen's posts referring to a "former employee" were intentionally crafted to suggest that she was referring to Esses. These allegations against Esses are entirely unfounded but were posted with the malicious intent to undermine Esses' reputation and credibility.

109.    Defendants published the foregoing statement to third parties through Defendants' Instagram account (with approximately 51,000 followers and, as the Instagram account is public,

it was viewable to the over one billion Instagram users) and website, reaching a broad audience and causing widespread harm to Plaintiff's reputation.

110.    Defendants made the foregoing statements without Plaintiff's consent, without privilege or authorization.

111.    Defendants made the foregoing statements with knowledge that it had contained a false insinuation about Plaintiff or with reckless disregard of the truth.

112.    Defendants made the foregoing statements with malicious intent directed toward Plaintiff.

113.    The foregoing statements directly and proximately caused Plaintiff special harm.

114.    As a direct and proximate cause of the foregoing statements Plaintiff suffered both economic and noneconomic damages.

115.    Accordingly, Plaintiff is entitled to financial damages, including punitive damages.

### AS AND FOR A NINTH CAUSE OF ACTION
#### (Defamation)

116.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

117.    Upon information and belief, on or about March 30, 2024, Defendants and or their employees at their direction used a fake Instagram account with the username 'shanie_greenstien' and posted a comment on a photo on Five:30's Instagram account, 'five30studio', which has approximately 4500 followers and is a public account and therefore viewable to Instagram's over one billion users which read: "Rachel Lauren and dini sleep with them that's why the come ew". Defendants made this false statement to publicize a lie that Esses sleeps with clients to harm Esses and her reputation.

118.     Defendants published the foregoing statement to third parties through Defendants'
Instagram account (with approximately 51,000 followers and, as the Instagram account is public,
it was viewable to the over one billion Instagram users) and website, reaching a broad audience
and causing widespread harm to Plaintiff's reputation.

119.     Defendants made the foregoing statement without Plaintiff's consent, without
privilege or authorization.

120.     Defendants made the foregoing statement with knowledge that it had contained a
false insinuation about Plaintiff or with reckless disregard of the truth.

121.     Defendants made the foregoing statement with malicious intent directed toward
Plaintiff.

122.     The foregoing statement directly and proximately caused Plaintiff special harm.

123.     As a direct and proximate cause of the foregoing statement Plaintiff suffered both
economic and noneconomic damages.

124.     Accordingly, Plaintiff is entitled to financial damages including punitive damages.

**AS AND FOR A TENTH CAUSE OF ACTION**
**(Defamation)**

125.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set
forth herein.

126.     On or about April 1, 2024, Defendants and their employees created the fake
Instagram profile account 'rachelesses2024' posing as Plaintiff.

127.     The Instagram bio for 'rachelesses2024' contained the false allegation that Plaintiff
sought to solicit 'sugar daddy' relationships, i.e. extramarital relationships with men for money.

128.   The Instagram bio for 'rachelesses2024' was publicly available to all Instagram users and thus the false statement was published to a potential audience more than one billion users. Further, Defendants used 'rachelesses2024' to post to many public Instagram accounts thus increasing the visibility of the false account thereby increasing the visibility of the false, defamatory statement.

129.   Defendants made the foregoing statement without Plaintiff's consent, without privilege or authorization.

130.   Defendants made the foregoing statement with knowledge that it had contained a false insinuation about Plaintiff or with reckless disregard of the truth.

131.   Defendants made the foregoing statement with malicious intent directed toward Plaintiff.

132.   The foregoing statement directly and proximately caused Plaintiff special harm.

133.   As a direct and proximate cause of the foregoing statement Plaintiff suffered both economic and noneconomic damages.

134.   Accordingly, Plaintiff is entitled to financial damages including punitive damages.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (Defamation)

135.   Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

136.   On or about May 18, 2024, Defendants posted on their Instagram account 'nutritionbytanya' stories a nine-page letter about Esses (the "Defamatory Letter"), prefacing it with an introductory post stating "after a year and a half of staying quiet and classy I finally was able to share my side of the story".

137.    Concurrently with sharing the letter on their Instagram stories, Defendants also posted the Defamatory Letter on their website nutritionbytanya.com as well as shared the Defamatory Letter on WhatsApp group chats run by Defendants.

138.    The letter she shared, filled with lies about Esses was blatantly defamatory.

139.    The Defamatory Letter begins by identifying that it addresses Esses, with 'Rachel' written at the top.

140.    The Defamatory Letter contains numerous false statements about Plaintiff, including but not limited to the following:

- Defendants falsely claimed Esses stole a large sum of money, stating "[t]here were a few incidents at the beginning of her employment that should have been red flags. One was when a large amount of cash went missing from my house that only she knew about and was there with me that dav." This statement is false and has caused substantial harm to Plaintiff and her reputation.

- Defendants falsely accused Esses of approaching and speaking inappropriately with Rosen's children. This statement is false and has caused substantial harm to Plaintiff and her reputation.

- Defendants made an egregious and false accusation implying Plaintiff was involved in a potential act of sabotage, stating: [t]his past November, my family and I nearly had a massive car accident which was miraculously avoided. The Axel mysteriously came off my car while we were going 70 miles an hour on a highway. The tow repair people and the car dealership people were all shocked. My car is a relatively new Audi, that has recently been inspected, and we were driving on a straight smooth road, not a rugged country one. They suspected foul play. I suspected

21

Rachel had sent one of her family members to do this." This statement is patently false and has caused substantial harm to Plaintiff and her reputation.

141.    The Defamatory Letter was published to third parties through Defendants' Instagram account (with approximately 51,000 followers and, as the Instagram account is public, it was viewable to the over one billion Instagram users) and website, reaching a broad audience and causing widespread harm to Plaintiff's reputation.

142.    Defendants made the foregoing statements without Plaintiff's consent, without privilege or authorization.

143.    Defendants made the foregoing statements with knowledge that they were completely false allegations against Plaintiff and with reckless disregard of the truth.

144.    Defendants made the foregoing statements with malicious intent toward Plaintiff.

145.    The foregoing statements directly and proximately caused Plaintiff special harm.

146.    As a direct and proximate cause of the foregoing statements Plaintiff suffered both economic and noneconomic damages.

147.    Accordingly, Plaintiff is entitled to financial damages including punitive damages.


### AS AND FOR A TWELFTH CAUSE OF ACTION
#### (Injunctive Relief)


148.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

149.    Defendants continue to publish false, negative, and defamatory statements about Plaintiff on social media, including but not limited to Instagram and WhatsApp Stories, in addition to Defendants' website and upon information and belief on other online forums.

150.    Upon information and belief, the Defamatory Letter and the false allegations made therein continue to be posted online by Defendants.

151.    Defendants and all those acting in concert with Defendants must be ordered to remove the Defamatory Letter as well as any other statement which defames and/or disparages Plaintiff in any way from any places Defendants shared it, including but not limited to Instagram, WhatsApp and nutritionbytanya.com.

152.    Moreover, Defendants must be preliminarily and permanently enjoined from slandering, libeling and/or otherwise defaming Plaintiff.

153.    Plaintiff has a strong likelihood of success on the merits.

154.    Plaintiff continues and will continue to suffer irreparable harm, including but not limited to damage to Plaintiff's reputation, emotional and mental health and wellbeing, professional development, and economic wellbeing if such injunctive relief is not granted.

155.    The balance of equities clearly favors the granting of injunctive relief as requested herein. Indeed, there is no doubt that Plaintiff would incur more prejudice if the injunctive relief requested herein is not granted that will Defendants if such relief is granted.

156.    Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff respectfully requests the Court enter judgment against Defendants Tanya Rosen and Tanya Rosen Inc. and in favor of Plaintiff as follows:

(a) Enter judgment in Plaintiff's favor and against Defendants on all claims herein;

(b) Awarding compensatory damages to Plaintiff in an amount to be determined at trial, but not less than $500,000.00;

(c) Awarding exemplary and punitive damages;

(d) On the Twelfth Cause of Action judgment preliminarily and permanently enjoining Defendants from slandering, libeling and/or otherwise defaming Plaintiff and directing Defendants and all those acting in concert to remove the Defamatory Letter and any other statement which defames and/or disparages Plaintiff in any way;

(e) Granting Plaintiff her costs and disbursements incurred in connection with this litigation, including attorneys' fees; and

(f) For such other and further relief as this Court deems just and proper.

Dated: Woodmere, New York
       May 20, 2024

Weg Law PLLC
*Attorney for Plaintiff*
701 Ibsen Street
Woodmere, New York 11598
(516) 400-2789
jasmine@wegesq.com

 */s/ Jasmine Weg*
By: Jasmine Weg, Esq.

## ATTORNEY VERIFICATION

**JASMINE WEG**, an attorney duly admitted to practice law in the Courts of the State of New York affirms the following to be true under the penalty of perjury: I am the attorney for plaintiff in the within action.  I have read the foregoing Verified Complaint and know the contents thereof and the same is true to the knowledge of affirmant, except as to the matters stated to be alleged upon information and belief and as to those matters, I believe it to be true.

Affirmant further states the reason why the Plaintiff does not make this verification is that said Plaintiff, upon information and belief, resides in a County and State other than where the affirmant maintains her office. That the grounds of affirmant's belief as to all matters not stated therein to be alleged upon her knowledge are investigations and information received by affirmant in the course of her duties as attorney for said Plaintiff.

Dated: Woodmere, New York
          May 20, 2024

 _/s/ Jasmine Weg_____
Jasmine Weg