UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

REGINA ESSES a/k/a RACHEL ESSES,

                                        Plaintiffs,                    Docket No.: 24-cv-03605-
                                                                       RPK-CLP

                -against-

TANYA ROSEN and TANYA ROSEN INC.,


                                        Defendants.

--------------------------------------------------------------------x




**MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE**


                                Weg Law PLLC
                                *Attorney for Plaintiff*
                                701 Ibsen Street
                                Woodmere, New York 11598
                                (516) 400-2789
                                jasmine@wegesq.com


                                 __ /s/ Jasmine Weg_____
                                By: Jasmine Weg, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT AND FACTS                                    1

LEGAL STANDARD                                                     2

ARGUMENT                                                           3


   A.  Plaintiff has suffered irreparable harm and, in the absence of injunctive relief, will

       continue to suffer irreparable harm because of Defendants' distribution of the *seiruv*

       and encouragement of the public to shame and harass Plaintiff          3

   B.  Balancing the Hardships                                     4

   C.  Plaintiff has a Likelihood of Success on the Merits         5

   D.  Granting the Relief Sought Herein is in the Public Interest  6


CONCLUSION                                                         7

# TABLE OF AUTHORITIES

**Cases**

Winter v. Nat. Res. Def. Council, Inc.,
555 U.S. 7, 20 (2008)                                                    2

Nat'l Coal. On Black Civic Participation v. Wohl,
98 F. Supp. 3d 457, 469 (S.D.N.Y. 2020)                                 2

Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,
598 F.3d 30, 35 (2d Cir. 2010)                                           3

F. M. Schaefer Corp. v. C. Schmidt Sons, Inc.,
597 F.2d 814, 815-19 (2d Cir. 1979)                                      3

Aguilar v. Immigration & Customs Enforcement Div. of the United States of America Dep't of
Homeland Sec.,
811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011)                                 3

Sau Thi Ma v. Lien,
198 A.D.2d 186, (N.Y. App. Div. 1993)                                   4-5

General Mills, Inc. v. Chobani, LLC,
158 F. Supp. 3d 106, 115 (N.D.N.Y. 2016)                                 5

Davis v. Boeheim,
24 N.Y.3d 262, 270 (2014)                                                5

Rich v. Fox News Network, LLC,
939 F.3d 112, 122 (2d Cir. 2019)                                          6

New York Times Co. v. Sullivan,
376 U.S. 254, 270 (1964)                                                 6

## PRELIMINARY STATEMENT AND FACTS

Plaintiff Regina Esses a/k/a Rachel Esses (hereinafter referred to as "Esses" or "Plaintiff") was employed by Defendants Tanya Rosen (hereinafter referred to as "Rosen") and Tanya Rosen Inc (hereinafter referred to as "TR Inc", and collectively, "Defendants") as a nutrition counselor and administrative assistant in Rosen's wellness business, earning $35 an hour with no benefits. Esses Declaration ("Esses Decl.") ¶2. Her role was not at an executive level, and her work was not in a competitive career field. Esses Decl. ¶2. After Plaintiff left Defendants' employment to take a new job, Rosen claimed this violated the terms of their employment contract and sought to adjudicate the matter in the Brooklyn-based beth din Badatz Mishpitei Yisroel ("BMY"). Esses Decl. ¶¶ 2-5. Upon receiving the *Hazmana* (summons) from the beth din, Plaintiff responded by requesting an alternative beth din in Lakewood, New Jersey, as is customary. Esses Decl. ¶ 6. After both parties agreed to appear in Plaintiff's beth din selection, Rosen failed to appear on the scheduled date, due to her own volition. Esses Decl. ¶ 6.

Following Rosen's increasing harassment, Plaintiff sought Rabbinic counsel, who advised that the beth din was not equipped to handle the allegations Plaintiff wished to bring. Esses Decl. ¶¶ 6-7. Consequently, Plaintiff initiated this action in state court, which was later removed by Defendant to this Court. Esses Decl. ¶ 8. Plaintiff informed the beth din and, later, Defendant, through undersigned counsel, that she would not participate in beth din proceedings while her legal action was pending in this Court due to the risk of conflicting outcomes. Esses Decl. ¶ 8. Despite this, Rosen recently requested that BMY issue a *seiruv* against Plaintiff which it did issue. Esses Decl. ¶ 9. The *seiruv* is misleading in its claim that Plaintiff failed to appear at the beth din, in that Esses communicated with beth din and explained that she would not appear in a religious proceeding while this matter was pending. Esses Decl. ¶¶ 8-10. The *seiruv* is now

being disseminated by Rosen through various platforms, including WhatsApp, email databases, and door-to-door distribution in Plaintiff's neighborhood. Esses Decl. ¶¶ 12-13. The *seiruv* lists Plaintiff's personal home address and is accompanied by a document advising the public to shame, ostracize, and harass Plaintiff to compel her to return to the Beth Din. Esses Decl. ¶ 14.

Plaintiff, who resides with her husband and two young children, has been subjected to extreme emotional and psychological distress due to the widespread dissemination of her home address and the encouragement of public shaming. Esses Decl. ¶¶ 14-18. The fear for her safety has been exacerbated by a traumatic armed break-in at her home just two weeks ago, during which intruders attempted to invade her home while she and her children were asleep. Plaintiff is unsure whether this break-in may have been related to the public dissemination of her address but is nonetheless terrified that further harm could occur if Defendant is allowed to continue spreading the *seiruv*. Esses Decl. ¶¶ 14-18.

Additionally, as a direct result of Rosen's actions, Plaintiff already lost a client who terminated their business relationship upon becoming aware of the *seiruv*.

## LEGAL STANDARD

To obtain a temporary restraining order ("TRO") and preliminary injunction, Plaintiff must demonstrate "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (see also Nat'l Coal. On Black Civic Participation v. Wohl, 498 F. Supp. 3d 457, 469 (S.D.N.Y. 2020)). The Second Circuit has consistently required a showing of

> (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground

for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (citations and quotations omitted). The Citigroup court defined the "serious questions" standard to permit "a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." Id (citing F. M. Schaefer Corp. v. C. Schmidt Sons, Inc., 597 F.2d 814, 815-19 (2d Cir. 1979)).

## ARGUMENT

Plaintiff's request for a TRO satisfies the elements of irreparable harm, a likelihood of success on the merits and/or sufficient serious questions going to the merits making fair ground for litigation and the balance of hardships tips in favor of Plaintiff.

**A. Plaintiff has suffered irreparable harm and, in the absence of injunctive relief, will continue to suffer irreparable harm because of Defendants' distribution of the *seiruv* and encouragement of the public to shame and harass Plaintiff**

"Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." Aguilar v. Immigration & Customs Enforcement Div. of the United States of America Dep't of Homeland Sec., 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011). Plaintiff has brought claims for defamation, intentional infliction of emotional distress (IIED) and tortious interference with business relations among other causes of action.

As detailed in Plaintiff's declaration, Plaintiff is suffering from severe emotional distress, anxiety, and fear due to Defendants' dissemination of the seiruv, which invites strangers to shun, shame, and ostracize Plaintiff. This is particularly dangerous given that Plaintiff's personal home address is included, further endangering Plaintiff's safety.

Defendants' actions are intended to, and are in fact causing, substantial harm to Plaintiff's reputation. This lawsuit arises, in part, because Defendants' persistent attacks are damaging Plaintiff's reputation both socially within her community and professionally. The seiruv is designed to falsely portray Plaintiff as someone who evades Jewish law, when this is untrue. Defendants' goal of excommunicating Plaintiff from not only her local Jewish community but also the broader Jewish community, as the seiruv has been circulated nationwide and possibly internationally, is particularly egregious.

The irreparable harm to Plaintiff is clear. The *seiruv*'s publication of Plaintiff's home address, accompanied by calls for public shaming and ostracism, poses an ongoing and severe threat to Plaintiff's physical safety, emotional well-being, and reputation. The recent break-in at Plaintiff's home, which she fears is connected to the dissemination of her address, underscores the immediate danger she faces.

Plaintiff is experiencing severe mental anguish and is facing tangible physical, social, and financial harm if Defendants are permitted to continue distributing the seiruv. Therefore, a TRO is necessary to prevent further irreparable harm.

### B. Balancing the Hardships

Analyzing a balance of the equities, they weigh in favor of plaintiff. The "'balancing of the equities' usually simply requires the court to look to the relative prejudice to each party accruing from a grant or a denial of the requested relief". <u>Sau Thi Ma v. Lien</u>, 198 A.D.2d 186,

(N.Y. App. Div. 1993). The Court must consider "the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." General Mills, Inc. v. Chobani, LLC, 158 F. Supp. 3d 106, 115 (N.D.N.Y. 2016).

In this matter, it is clear the balance of hardships weighs in favor of Plaintiff. As demonstrated herein and in the accompanying papers, Plaintiff faces real harm from the continued distribution of the *seiruv*. On the other hand, Rosen does not face any harm if she can no longer distribute the *seiruv*. It is unclear what Rosen benefits from the distribution of the *seiruv* other than harm, pain and distress to Plaintiff. The harm to Plaintiff far outweighs any potential harm to Defendant if the TRO is granted. Defendant's interest in disseminating the *seiruv* is minimal at best compared to the substantial and irreparable harm Plaintiff faces, including threats to her safety and mental health, loss of business, and damage to her reputation.

### C. Plaintiff has a Likelihood of Success on the Merits

Defendants' dissemination of the *seiruv* constitutes actionable defamation because it falsely represents Plaintiff's actions regarding the beth din proceedings, suggesting she willfully disregarded religious obligations, which is untrue and damaging to her reputation. See Davis v. Boeheim, 24 N.Y.3d 262, 270 (2014) (defamation claim requires a false statement that tends to expose a person to "public contempt").

Furthermore, Plaintiff has set forth a cause of action for intentional infliction of emotional distress which is only amplified by Defendants' distribution of the *seiruv* and encouragement of strangers to harass Plaintiff. "Under New York law, although "[t]he standard of outrageous conduct is strict, rigorous and difficult to satisfy ..., that is not the case when there is a deliberate and malicious campaign of harassment or intimidation." Rich v. Fox News

Network, LLC, 939 F.3d 112, 122 (2d Cir. 2019). The dissemination of the *seiruv* cannot be classified as anything other than a malicious campaign of harassment *and* intimidation.

### D. Granting the Relief Sought Herein is in the Public Interest

Granting the TRO serves the public interest by preventing further harm to Plaintiff and maintaining public order. Encouraging public shaming and social ostracism, especially by disseminating private information like a home address, threatens the safety and well-being of individuals and their families, and should be curtailed by the courts. See New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964) (recognizing the need to balance First Amendment rights against harm to individuals).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant her motion for a Temporary Restraining Order and Preliminary Injunction enjoining Defendant from further disseminating the *seiruv* or any related materials that include Plaintiff's personal information or encourage public shaming and ostracism, and for such other and further relief as this Court deems just and proper.

Dated: Woodmere, New York
   September 5, 2024

          Respectfully Submitted,

          Weg Law PLLC

          __*/s/ Jasmine Weg*__
          By: Jasmine Weg, Esq.
          *Attorney for Plaintiff*
          701 Ibsen Street
          Woodmere, New York 11598
          (516) 400-2789
          jasmine@wegesq.com