UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
REGINA ESSES,

                Plaintiff,                     **MEMORANDUM AND ORDER**
        v.                                      24-CV-3605 (RPK) (CLP)

TANYA ROSEN and TANYA ROSEN INC.,

                Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Regina Esses has moved for a preliminary injunction under Federal Rule of Civil Procedure 65 against defendants Tanya Rosen and Tanya Rosen Inc. enjoining defendants from disseminating a declaration from a rabbinical court and an accompanying instructional document. Plaintiff's motion for a preliminary injunction is denied.

## BACKGROUND

### A. Factual Allegations

      The following facts are taken from plaintiff's filings in support of her motion for a preliminary injunction and are assumed true for purposes of this motion.

      Both plaintiff and defendant Tanya Rosen are members of the Orthodox Jewish community. Am. Compl. ¶ 2 (Dkt. #7). As relevant to plaintiff's request for a preliminary injunction, plaintiff asserts that, before she filed this lawsuit, Rosen secured the issuance of a summons against plaintiff by a Jewish rabbinical court, or *beth din*, called Badatz Mishpitei Yisroel ("BMY"), regarding plaintiff's former employment contract with defendant Tanya Rosen Inc. Decl. of Pl. ("Pl.'s Decl.") ¶¶ 4, 6 (Dkt. #13-1). According to plaintiff, "[u]nder Jewish law, when an individual is summoned to beth din, the recipient has the right to propose an alternative beth din to avoid potential bias or undue influence from the summoner's chosen venue." *Id.* ¶ 5. Plaintiff alleges that "BMY, at Rosen's request, continued to issue summonses demanding

1

[plaintiff's] appearance," even though plaintiff proposed an alternative rabbinical court in New Jersey. *Id.* ¶ 6.

Plaintiff asserts that Rosen later "sought a *seiruv* from BMY against" plaintiff. *Id.* ¶¶ 8–9. According to plaintiff, a "*seiruv* is a public declaration issued by beth din that a person has refused to comply with rabbinic court orders to appear." *Id.* ¶ 9. The *seiruv* lists plaintiff's home address and states:

> Whereas, close to a year has passed since we have sent out our first summons to [plaintiff] and until this day a Din torah has not been scheduled, we have no choice but to declare [plaintiff] a Mesareves, in addition to her filing in court against [Rosen] without permission from a Bais Din. She claims to have permission from her Rabbi, which she has not substantiated to the Beis Din. Anyone that may impress upon her the severity of the grave sin of refraining from appearing in Beis Din shall do so and it will be to his merit.

BMY *Seiruv* 1 (Dkt. #13-2); *see* Pl.'s Decl. ¶¶ 10–11.

Rosen distributed the *seiruv*, along with an "instructional document" purporting to describe what a *seiruv* generally entails, "throughout [plaintiff's] neighborhood," in various "Jewish community Whatsapp group chats," and to Rosen's listserv, which contains thousands of recipients. Pl.'s Decl. ¶¶ 12–13; *see* BMY *Seiruv* 2. The instructional document describes a *seiruv* as "a form of contempt order issued by a rabbinical court." BMY *Seiruv* 2. It states that the "public declaration serves as a form of social pressure, calling on the community to shun or ostracize the individual until they comply with the court's demands." *Ibid.* It adds that "the treatment of someone with a [*seiruv*] can vary depending on the community's customs," but that, generally, "[t]he community may avoid social interaction with the individual, including not inviting them to communal events, not including them or their spouse in a minyan (quorum for prayer), and refraining from doing business with them." *Ibid.* In addition, "[t]he community may be informed of the [*seiruv*], and the person's refusal to comply with the court's ruling is to be publicized." *Ibid.*

Plaintiff claims that Rosen's dissemination of the *seiruv* has caused her "significant emotional distress" and fear, amplified by plaintiff's pregnancy and a recent "armed break-in at [plaintiff's] home" by unknown persons. Pl.'s. ¶¶ 14–18. Plaintiff also claims that she has "lost a client who terminated their business relationship upon becoming aware of the *seiruv*." *Id.* ¶ 19.

B. **Procedural History**

Plaintiff filed this lawsuit in April 2024 in New York state court. *See* Notice of Removal (Dkt. #1). Defendants then removed the case to this Court. *See ibid.* Plaintiff's operative amended complaint alleges a wide-ranging "campaign of harassment" by Rosen against plaintiff, beginning after plaintiff left defendants' employment in October 2022. Am. Compl. ¶¶ 1, 10–11, 15–61. For example, plaintiff alleges that Rosen arranged a box containing feces to be sent to plaintiff's home, sent harassing text messages to plaintiff's husband, and created an Instagram account under plaintiff's name that Rosen used to write posts designed to portray plaintiff in a negative light. *See ibid.* Plaintiff asserts various state-law claims against defendants and seeks compensatory and punitive damages as well as injunctive relief. *See id.* ¶¶ 62–156.

Several months after filing her amended complaint, plaintiff filed a motion styled as a motion for a temporary restraining order and preliminary injunction, which also attaches a proposed supplemental complaint. *See* Proposed Order to Show Cause for Prelim. Inj. ¶ 1 (Dkt. #13); Proposed Suppl. Compl. (Dkt. #13-5). The proposed supplemental complaint seeks to add supplemental claims for defamation, intentional infliction of emotional distress ("IIED"), and tortious interference with business contracts based on the distribution of the *seiruv* described above. *See generally* Proposed Suppl. Compl.

The motion for a temporary restraining order and preliminary injunction also focuses solely on defendants' distribution of the *seiruv*. Specifically, plaintiff moves for a preliminary injunction

3

"restraining the Defendants from further disseminating the notice of *seiruv* . . . or any similar documents . . . that contain the plaintiff's home address or false claims regarding the plaintiff's failure to appear at a Beth Din." Proposed Order to Show Cause for Prelim. Inj. ¶ 1. Plaintiff also requests that the Court order defendants "to take down or request the removal of any existing copies of the Seiruv or similar materials from any platforms where it has been disseminated." *Id.* ¶ 2.

The Court denied plaintiff's request for a temporary restraining order and set a schedule for briefing on plaintiff's motion for a preliminary injunction. Sept. 7, 2024 Order. Defendants have now opposed that motion. *See* Defs.' Mem. of L. in Opp'n to Pl.'s Mot. for a Prelim. Inj. ("Opp'n") (Dkt. #14). Defendants have not yet responded to plaintiff's request to file a supplemental complaint.

## DISCUSSION

Plaintiff's motion for a preliminary injunction is denied because plaintiff has not demonstrated either a likelihood of success or serious questions going to the merits of her underlying claims.

A preliminary injunction is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted). The Supreme Court has consistently instructed that unless a statute states otherwise, a court's decision whether to grant a preliminary injunction is governed by "the traditional four-factor test . . . articulated in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1574 (2024). Under that test, "a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

4

is in the public interest.'" *Id.* at 1576 (quoting *Winter*, 555 U.S. at 20). Just this year, in *McKinney*, the Supreme Court directed that "absent a clear command from Congress, courts must adhere to the traditional four-factor test" in deciding whether to grant a preliminary injunction. *Ibid.*

In their preliminary injunction papers, the parties invoke a slightly different test utilized in some Second Circuit decisions. Opp'n 1; Mem. of L. in Supp. of Order to Show Cause ("Mem. in Supp.") 2–3 (Dkt. #13-6). Under that test, "the movant has to 'show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)). It is difficult to see how this standard survives *McKinney*. But plaintiff would not be entitled to a preliminary injunction even under that test because her supporting declaration does not raise serious questions going to the merits of the supplemental claims she advances in her preliminary injunction application—defamation and IIED. Mem. in Supp. 5–6.

**I.  Defamation**

Plaintiff has not established either a likelihood of success or serious questions going to the merits of her supplemental defamation claim.

"In New York, a plaintiff must establish five elements to recover in libel: (1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or *per se* actionability." *Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014). New York's standard for falsity, like that of "most other jurisdictions, . . . overlooks minor inaccuracies and concentrates upon substantial truth."

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017) (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991)); *see* 43A N.Y. Jur. 2d *Defamation & Privacy* § 98 (2024) ("Innuendo or adverse inferences are not enough to establish that a statement is false, for purposes of a defamation action."); Restatement (Second) of Torts § 581A, cmt. f (Am. L. Inst. 1977). As such, to adequately plead a claim for defamation, a plaintiff "must allege that the complained of statement is 'substantially false.'" *Tannerite Sports*, 864 F.3d at 242 (quoting *Franklin v. Daily Holdings, Inc.*, 21 N.Y.S.3d 6, 12 (App. Div. 2015)). If the alleged statement is "substantially true," *i.e.* "if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced," then the defamation claim "should be dismissed." *Ibid.* (brackets omitted) (quoting *Franklin*, 21 N.Y.S.3d at 12); *accord* 43A N.Y. Jur. 2d *Defamation and Privacy* § 99 (2024).

A plaintiff who fails to plead that the defendant's direct statements are substantially false might still state a claim for defamation by implication. *See Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 42–43 (App. Div. 2014). Defamation by implication, however, is a "narrow doctrine" and requires the plaintiff to "make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Wilson v. New York*, No. 15-CV-23 (CBA) (VMS), 2018 WL 1466770, at *4 (E.D.N.Y. Mar. 26, 2018) (quoting *Stepanov*, 987 N.Y.S.2d at 44); *accord Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 173 (S.D.N.Y. 2021).

The First Amendment limits courts' ability to adjudicate some defamation claims involving religion. The Establishment Clause bars state actors from deciding disputes of religious doctrine or practice. *See Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709 (1976);

*Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 445–46 (1969). Federal courts therefore consistently refuse to adjudicate defamation claims that would require them to decide questions of religious law. *See, e.g.*, *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986); *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 249–54 (S.D.N.Y. 2014); *Hartwig v. Albertus Magnus Coll.*, 93 F. Supp. 2d 200, 212–13, 218–19 (D. Conn. 2000); *Klagsbrun v. Va'ad Harabonim of Greater Monsey*, 53 F. Supp. 2d 732, 736–42 (D.N.J. 1999), *aff'd sub nom.* 263 F.3d 158 (3d Cir. 2001).

Plaintiff has not shown a likelihood of success or serious questions as to her supplemental defamation claim because her declaration, even if fully credited, does not establish that the statements in the *seiruv* or accompanying document are actionable as substantially false statements. Plaintiff offers four theories to establish this element, but none withstand scrutiny.

Plaintiff first asserts that the *seiruv* defames her because it "states that Plaintiff improperly initiated this matter in court in lieu of bringing it to beth din." Reply in Supp. of Mot. for a Prelim. Inj. ("Reply") 1 (Dkt. #15). While plaintiff does not dispute that she brought the claims in this case before a secular court rather than a religious one, she suggests that the *seiruv* is defamatory because it indicates that her doing so was "improper[]." That statement is nowhere contained in the *seiruv* itself. But even if the *seiruv* is read to convey that implication through its reference to plaintiff's civil filing, the First Amendment would prevent this Court from second-guessing a religious court's view of impropriety. Any implication of impropriety in the order of the *beth din* is "plainly made in the context of the Orthodox Jewish faith." *Klagsbrun*, 53 F. Supp. 2d at 741. Plaintiff's claim thus invites the Court to determine whether a rabbinical court properly applied religious principles in disapproving of plaintiff's conduct—the type of "judicial intrusion into ecclesiastical doctrine and practice" that "is unquestionably forbidden ground under the First

Amendment. *Ibid.* (refusing to adjudicate defamation claim based on *beth din*'s publicly disseminated notice alleging that plaintiff had committed bigamy, failed to comply with order of rabbinical court, and failed to submit to the jurisdiction of rabbinical court).

Plaintiff next suggests that the *seiruv* is defamatory because it states that plaintiff "has not 'substantiated'" to BMY that she received permission from her rabbi "to forego beth din proceedings." Reply 2. But plaintiff has not shown serious questions going to the merits of a claim based on this statement because she does not contend that she *did* provide substantiation of rabbinical permission to the *beth din*. While plaintiff suggests that the *seiruv* "falsely implies the beth din requested substantiation from Plaintiff," *ibid.*, she has not made the requisite "rigorous showing," *Stepanov*, 987 N.Y.S.2d at 44, that this inference is supported by the *seiruv*, which simply states that plaintiff "has not substantiated" her "claim[] to have permission from her Rabbi" not to appear, BMY *Seiruv* 1.

Plaintiff next claims that the instructional document distributed with the *seiruv* is defamatory because it falsely conveys "that the rabbis of the beth din were encouraging social ostracism and shaming in this case." Reply 2. Again, such a statement appears nowhere on the face of the instructional document, which makes no reference to BMY or the specific *seiruv* BMY issued regarding plaintiff. It instead appears to describe what the issuance of a *seiruv* generally entails. In any event, the Establishment Clause would preclude this Court from finding defamation on that ground. To decide whether the instructional document was true or false in its asserted characterization of plaintiff's *seiruv*, the Court would be "called upon to inquire into the rules and customs governing rabbinical courts as they are utilized in the Orthodox Jewish religion," *Klagsbrun*, 53 F. Supp. 2d at 741–42, to determine whether a *seiruv* should be understood to encourage social ostracism or shaming, and then to give an authoritative construction to a religious

court's declaration in light of those religious rules and customs. Again, this is the type of intrusion into religious practice that the First Amendment prohibits.

Finally, plaintiff claims that "the *seiruv* in its entirety" is defamatory because it "was procured under false pretenses" by Rosen. Reply 2–3. Specifically, plaintiff alleges that Rosen "procur[ed] the seiruv . . . to falsely and disingenuously defame" plaintiff, as suggested by the fact that Rosen's "behavior in this forum directly contradicts her claim to the beth din that she wishes to pursue arbitration." *Id.* at 3. But plaintiff cannot establish a defamation claim based on asserted bad motives, unaccompanied by evidence of falsity, because defamation requires falsity. *Tannerite Sports*, 864 F.3d at 242, 244.

Plaintiff has thus failed to establish a likelihood of success or serious questions going to the merits of her supplemental defamation claim.

## II. Intentional Infliction of Emotional Distress

Plaintiff has also not established a likelihood of success or serious questions going to the merits of her supplemental IIED claim.

Under New York law, an IIED claim requires the plaintiff to establish "four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko v. Am. Broad. Cos. Inc.*, 49 N.E.3d 1171, 1178 (N.Y. 2016) (citation omitted). The "extreme and outrageous conduct" standard is

9

"rigorous[] and difficult to satisfy." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell*, 612 N.E.2d at 702).

Plaintiff has not alleged facts that establish either a likelihood of success or serious questions going to the merits of her supplemental IIED claim. Plaintiff's motion seeking a preliminary injunction based on IIED does so exclusively based on "[t]he dissemination of the *seiruv*," which she argues "cannot be classified as anything other than a malicious campaign of harassment and intimidation." Mem. in Supp. 5–6 (emphasis omitted). But as explained above, plaintiff has not plausibly alleged any inaccuracy in the *seiruv* or accompanying flier that is within the competence of this Court to adjudicate. Plaintiff cannot meet her burden of establishing "extreme and outrageous conduct" that "go[es] beyond all possible bounds of decency" and is "utterly intolerable in a civilized community" based merely on dissemination of true statements. *See Lawrence v. Altice USA*, 841 F. App'x 273, 277 (2d Cir. 2021) (applying Connecticut's similar "extreme and outrageous" standard and concluding that defendant's "substantially true reports concerning [plaintiff]'s conduct cannot be so characterized"). And because plaintiff cannot invite the Court to intrude on questions of religious law in the context of an IIED claim any more than in the context of a defamation claim, plaintiff cannot base an IIED claim on the theory that the *seiruv* erred in treating plaintiff's conduct as improper or that the informational document misstates the implications of the *seiruv* under Jewish law. *See, e.g.*, *Davis Lee Pharmacy, Inc. v. Manhattan Cent. Cap. Corp.*, 327 F. Supp. 2d 159, 164 (E.D.N.Y. 2004) ("[C]laims for . . . [IIED] are not available in New York when their adjudication would require the courts to venture into forbidden ecclesiastical terrain." (quotation marks and citation omitted)).

Plaintiff has thus failed to establish a likelihood of success or serious questions going to the merits of her supplemental IIED claim.

## CONCLUSION

Plaintiff's motion for a preliminary injunction is denied.

SO ORDERED.

<i>/s/ Rachel Kovner</i>
RACHEL P. KOVNER
United States District Judge

Dated: October 15, 2024
       Brooklyn, New York